**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PUERTO RICO ENERGY LLC,<br>    Plaintiff,<br><br>v.<br><br>ANTONIO JUAN LEÓN, CJL<br>INVESTMENT LLC, AND LOS JUANES<br>INVESTMENT, CORPORATION,<br>    Defendant(s). | Civil No. 25-1220<br><br>**COMPLAINT FOR<br>PRELIMINARY INJUNCTION,<br>DECLARATORY JUDGMENT, AND<br>DAMAGES**<br><br>April 16, 2025 |

**VERIFIED COMPLAINT**

TO THE HONORABLE DISTRICT COURT:

COMES NOW plaintiff, Puerto Rico Energy LLC, through the undersigned counsel, and hereby files a Verified Complaint against defendants Antonio Juan León, CJL Investments, LLC and Los Juanes Investment, Corporation, and allege and state as follows:

**Preliminary Statement**

1.    Plaintiff Puerto Rico Energy LLC ("Puerto Rico Energy") seeks a declaration validating its immediate termination of the franchises maintained by defendant Antonio Juan León ("the Dealer") and CJL Investment LLC ("CJL," and together with the Dealer, "the Franchisees") at three of its leased marketing premises.

2.    The termination is based on the Dealer's failure to pay amounts due to Puerto Rico Energy and the Franchisees' failure to comply with other material and reasonable provisions of the franchises, as provided by relevant provisions of the Petroleum Marketing Practices Act, 15 USC §§ 2802-2806 ("the PMPA").

3.    The amounts due stem from the Dealer's duty to pay, reimburse, indemnify, and hold harmless Puerto Rico for amounts due by him, personally, under two previously

existing franchise relationships with Puerto Rico Energy.

4.     Puerto Rico Energy also appears to put an end, recover and repossess the relevant leased marketing premises and the "Puma," "Super7," "Shop Express," "Texaco," and "Star Mart" identifying trademarks, including without limitation, identification signs, trademarks, tradenames and colors, logos, brand identification, product and service advertising credit cards, products names and service marks ("the Identifying Marks").

5.     Lastly, Puerto Rico Energy pursues from the Defendants the repayment and collection of amounts owed to it and the recovery of the damages, losses, costs and fees resulting from their conduct in violation of the relevant contracts, as set forth below.

## The Parties

6.     Puerto Rico Energy is a Puerto Rico limited liability company with a principal place of business in San Juan, Puerto Rico. Among its business activities, Puerto Rico Energy is engaged in the distribution and marketing of petroleum products across the Commonwealth of Puerto Rico, including under the Puma and the Texaco brands and under other integrated refiner brands, through certain agreements with refiners by which Puerto Rico Energy is permitted to distribute and sell branded motor fuel associated with the trademarks and trade dress of such refiners through various channels of trade.

7.     Puerto Rico Energy is part of a vertically integrated global petroleum products distributors headquartered in Geneva, Switzerland. It belongs to the Latin America region managed out of the Commonwealth of The Bahamas.

8.     The channels of trade through which Puerto Rico Energy sells motor fuel include that it sells and supplies branded motor fuel to individual franchisees for resale to the motoring public under franchise agreements either containing both a lease and a supply

component, in circumstances where Puerto Rico Energy owns or leases the retail gas station premises being supplied, or a supply component only where the individual franchisee owns the premises.

9.    When Puerto Rico Energy owns or leases the retail gas station premises being supplied, the franchise model is commonly referred to as "company-owned, dealer-operated" or CODO. When Puerto Rico Energy owns the premises being supplied, the franchise agreements between Puerto Rico Energy and its franchisees are often in the form of Franchise Agreement with the lease component and related exhibits, addenda and ancillary agreements —which create a petroleum marketing franchise relationship under the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801 *et seq.* ("PMPA").

10.    The Dealer (defendant Antonio Juan León) is a natural person and a citizen of the Commonwealth of Puerto Rico with residence established in Urb. Jardines de Ponce, Rocío del Cielo Street #G-7, Ponce, Puerto Rico 00730.

11.    CJL (defendant CJL Investment LLC) is a Puerto Rico limited liability company with its principal place of business listed at Urb. Jardines de Ponce, Rocío del Cielo Street #G-7, Ponce, Puerto Rico 00730.

12.    The Dealer was operating three branded gas station as a franchisee of Puerto Rico Energy under the CODO franchise model.

13.    The Dealer was operating the first two gas stations under the Puma brand. The first of which is located at Hostos Avenue #1155, La Marina Ward, Ponce, Puerto Rico (the "Premises 178"). The Dealer was also operating a Shop Express brand integrated convenience store at the Premises 178.

14.    The second Puma brand gas station is located at Machuelo Ward, Glenview

Shopping, Ponce, Puerto Rico (the "Premises 98"). The Dealer was also operating a Super7 brand integrated convenience store at the Premises 98.

15.    In both of these cases, the Dealer is the franchisee under the relevant franchise agreements, as defined below.

16.    The Dealer was operating a third gas station franchise under the Texaco brand. In this case, CJL was the franchisee under the relevant franchise agreement, as defined below, while the Dealer was CJL's sole designated key person and guarantor. The Texaco brand gas station is located at State Rd. 14, Km. 6.0, Coto Laurel Ward, Ponce, Puerto Rico (the "Premises 862", and together with Premises 178 and 98, the "Premises"). The Dealer was also operating a Star Mart brand integrated convenience store at the Premises 862.

17.    Los Juanes Investment, Corporation ("Los Juanes," and together with the Franchisees, "the Defendants") is a Puerto Rico limited liability company with its principal place of business also listed at Urb. Jardines de Ponce, Rocío del Cielo Street #G-7, Ponce, Puerto Rico 00730.

18.    Los Juanes and the Dealer, as its key person and personal guarantor, operated a previous gas station franchise under the Puma brand, identified as S/S 446 and located at Carr. 14, Km. 11.3, Jacaguas Ward, Juana Díaz, Puerto Rico (the "Premises 446").

19.    The Dealer also operated a previous gas station franchise under the Puma brand, identified as S/S 167 and located at State Rd. 14, Collores Ward, Juana Díaz, Puerto Rico ("Premises 167," and together with Premises 446, "the Past Premises").

**Jurisdiction and Venue**

20.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, particularly the Lanham Act, 15 U.S.C. §§

1051 *et seq*., and the PMPA, 15 U.S.C. § 2801 *et seq*., and pursuant to 28 U.S.C. § 1367(a) as to all other Commonwealth-law claims arising out of the same set of operative facts.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Dealer operates a retail gasoline station at the Premises that is the subject of this action in this District, and a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this District.

## Facts Common to All Counts

### A.  The Identifying Marks are famous brands

#### i.     *PUMA*

22.     Puma is a global gasoline brand that has been leading the energy marketing industry in Puerto Rico.

23.     It arrived in Puerto Rico in 2008 as a wholesale provider to independent service stations. Since its arrival, Puerto Rico Energy has evolved to become one of the Island's largest energy retail and storage providers.

24.     In 2011, Puerto Rico Energy finalized the acquisition of the assets of Caribbean Petroleum Corporation (CAPECO), which had entered bankruptcy following the 2009 explosion of its oil refinery in Puerto Rico. These assets included 147 service stations and a terminal in Bayamon, Puerto Rico, which Puerto Rico Energy environmentally remediated and improved as the result of voluntary agreements it had made with the U.S. EPA and Puerto Rico's Environmental Quality Board.

25.     In 2012, Puerto Rico Energy followed that acquisition with the 2012 purchase of Chevron's Puerto Rico business, which included 192 Texaco brand service stations throughout the Island and 7 more in St. Thomas in the U.S. Virgin Islands. Following this

acquisition, by 2015, Puerto Rico Energy managed a franchise network of 344 Puma brand service stations in Puerto Rico.

26.    In Puerto Rico, the Puma brand is currently administered by Puerto Rico Energy, an affiliate of the owner Puma Energy International S.A.

27.    All Puma brand gas stations in Puerto Rico offer Puma regular and premium octane gasoline with the exclusive Evolve additive.

28.    Puma has established itself in Puerto Rico as a leading brand in the market offering products of the highest quality, such as Puma gasoline, Evolve additive, and excellent service at each Puma brand service station.

29.    Puma brand service stations are fully integrated in Puerto Rico with the Super7 and Shop Express brand convenience stores. The Super7 and Shop Express convenience store brands have become a staple of the Puma brand showcasing its quality and market acceptance. Puma brand service station with an integrated Super7 or Shop Express convenience stores experience improved sales and traffic.

30.    The foregoing is not by chance. Puerto Rico Energy invests, promotes, and advertises the Puma, Evolve, Super7 and Shop Express trademarks in Puerto Rico through traditional and online media. It promotes fuel and non-fuel product and services in the ordinary course of business as part of its business goal to drive traffic and consumers to its branded gasoline service stations.

31.    Puerto Rico Energy is the exclusive licensee of the Puma, Evolve, Super7 and Shop Express trademarks in Puerto Rico, together with the color combination, font and design marks for the canopies of its Puma brand gasoline stations and Super7 and Shop Express brand convenience stores.

32.     These trademarks have been registered in the United States Patent and Trademark Office under Registration Nos. 4929953, 6428764, 6784421, and related registrations.

   ii.    ***Texaco***

33.     Texaco is the gasoline brand leading the energy marketing industry globally. It was established in the State of Texas in 1902. It has been in operation in Puerto Rico since 1911. *See* About the Texas Company, https://texacopuertorico.com/en/history/ (last accessed Apr. 14, 2025).

34.     The Texaco trademark is internationally recognized by its famous "Texaco Star". The first Texaco star arrived in 1903, as an embracement of the five-pointed symbol of the State of Texas. The company that owned the Texaco brand at the time became eponymous with its famous brand since 1959.

35.     Texaco gasoline was later improved with the added cleaning power of the Techron additive. Techron is the first patented additive with over 40 years in the global energy marketing industry. The Techron additive also became a famous and integral associated brand with Texaco throughout its branded gasoline service stations.

36.     In Puerto Rico, the Texaco brand is currently administered under an exclusive license thereto by Puerto Rico Energy, doing business as Puerto Rico Fuel Services.

37.     All Texaco stations in Puerto Rico offer Texaco regular and premium octane gasoline with the exclusive Techron additive.

38.     Texaco has established itself in Puerto Rico as a leading brand in the market offering products of the highest quality, such as Texaco gasoline, Techron additive, and excellent service at each Texaco brand service station.

7

39.    Texaco brand service stations are fully integrated in Puerto Rico with the Star Mart brand convenience stores. In use for several years, the Star Mart brand has become a staple of the Texaco brand showcasing its quality and market acceptance. Every Texaco brand service station with an integrated Star Mart convenience store experiences increased sales and traffic.

40.    The foregoing is not chance. Puerto Rico Energy invests, promotes, and advertises the Texaco, Techron, and Star Mart trademarks in Puerto Rico through traditional and online media. It promotes fuel and non-fuel product and services in the ordinary course of business as part of its business goal to drive traffic and consumers to its branded gasoline service stations.

41.    Puerto Rico Energy is the exclusive licensee of the Texaco, Techron, and Star Mart trademarks in Puerto Rico, together with the color combination, font and design marks for the canopies of its Texaco brand gasoline stations and Star Mart brand convenience stores.

42.    These trademarks have been registered in the United States Patent and Trademark Office under Registration Nos. 1222306, 1315020, 2259016, 2256757, and related registrations. The Star Mart trademark has been registered in trademark office of the Department of State of the Commonwealth of Puerto Rico under Registration No. 223817.

43.    These trademarks are well-known and easily recognizable and identifiable in their field of business. This is the result of its strong market presence in the energy marketing industry, which is made possible through the significant and continuous investments made by its owner and Puerto Rico Energy to develop and maintain their goodwill. These registrations are in full force and effect, unrevoked, and uncanceled.

**B.  Terms of the franchises with the Defendants**

44.     The Defendants operated each of the Premises as Puma and Texaco brand gas stations pursuant to individual franchise agreements, including related exhibits, addenda and ancillary agreements and documents thereto, governing the terms and conditions of the franchise relationship at each of the leased marketing premises.

45.     The Dealer operated Premises 98 as a franchisee pursuant to a Puma Franchise Agreement of September 24, 2021 ("Premises 98 Franchise Agreement"). Among the related exhibits, addenda and ancillary agreements and documents attached to the Premises 98 Franchise Agreement, the Dealer executed a certain Addendum A for the operation of a Super7 integrated convenience store franchise within the same leased marketing premises. [Exhibit 1: Premises 98 Franchise Agreement]

46.     The Dealer operated Premises 178 as a franchisee pursuant to a Puma Franchise Agreement of May 12, 2015 ("Premises 178 Franchise Agreement"). Among the related exhibits, addenda and ancillary agreements and documents attached to the Premises 178 Franchise Agreement, the Dealer executed a certain Addendum A for the operation of a Shop Express integrated convenience store franchise within the same leased marketing premises. [Exhibit 2: Premises 178 Franchise Agreement]

47.     The Dealer operated Premises 862 as CJL's sole designated key person. In this case, CJL is the franchisee pursuant to a Texaco Franchise Agreement of August 24, 2022 ("Premises 862 Franchise Agreement").[1] Among the related exhibits, addenda and ancillary agreements and documents attached to the Premises 862 Franchise Agreement, CJL executed a certain Addendum A for the operation of a Star Mart integrated convenience store franchise

---

[1] The referenced Premises Franchise Agreements are jointly hereinafter referred to as "the Terminated Franchise Agreements".

within the same leased marketing premises. [Exhibit 3: Premises 862 Franchise Agreement]

48.     Each of these Terminated Franchise Agreements is a "franchise," between Puerto Rico Energy as "franchisor," and the Dealer as "franchisee," at Premises 98 and 178, and CJL as "franchisee," at Premises 862, as such terms are defined in § 2801 of the PMPA.

49.     The Terminated Franchise Agreements are based on a standard model franchise agreement employed by Puerto Rico Energy across its entire network of franchise relationships, as defined in the PMPA, throughout Puerto Rico.

50.     In summary, the Terminated Franchise Agreements required the Franchisees to comply with certain reasonable and material obligations, including, without limitation, (i) to pay in a timely manner when due all sums owed to Puerto Rico Energy, (ii) to comply with all applicable laws related to each of the Premises, including specifically to comply with Regulation to Control Underground Storage Tanks Regulation, identified as Regulation No. 9035 of June 27, 2018 ("UST Regulation"); and (iii) to pay any amounts due via direct debit or electronic funds transfer, unless Puerto Rico Energy notified Defendants a different method, among other listed below.

51.     Upon entering into the Terminated Franchise Agreements, the Franchisees agreed to fully comply with provisions that are both reasonable and of material significance to the franchise relationships. Namely, the Franchisees acknowledged and agreed to the following:

    a.     In the case of CJL, to designate the Dealer as the sole key person authorized under the Premise 862 Franchise Agreement. **Article 1.1.1 of the Premises 862 Franchise Agreement**.

    b.     To authorize Puerto Rico Energy to set off any amounts necessary to

apply or credit to any debt which, at any such time, the Franchisees maintained with Puerto Rico Energy for any purpose. **Article 3.1.2 of the Terminated Franchise Agreements**.

      c.      To pay any amounts due via direct debit or electronic funds transfer, unless Puerto Rico Energy notified the Franchisees a different method. **Article 3.2.2 and 3.2.3 of the Terminated Franchise Agreements**.

      d.      In the case of CJL, to designate a key person to administer the operation of the franchise on a daily basis and that such key person would comply with all requirements that Puerto Rico Energy normally requires of its franchisees. **Article 4.2.5 of the Terminated Franchise Agreements**.

      e.      To grant Puerto Rico Energy sole and absolute discretion to accept or reject the substitution or change of any corporate member, shareholder or key person who personally incurred in a breach of Article 16 of the Terminated Franchise Agreements, and to acknowledge that Puerto Rico Energy would normally deny its consent to any such substitution or change when the relevant acts or events that would warrant termination or nonrenewal under Article 16 of the Terminated Franchise Agreements affected or were in any way relevant to the operation of the Premises. **Articles 4.2.10 and 4.1.11 of the Terminated Franchise Agreements**.

      f.      To grant Puerto Rico Energy the right to withhold deliveries of fuel if Puerto Rico Energy suspected that the USTs and UST System failed to comply with applicable federal, state, or local laws, regulations, rules, ordinances, permits, or other requirements by federal, state or local authorities. **Article 6.1.13 of the Terminated Franchise Agreements**.

g.      To comply with all laws, ordinances, rules, regulations, orders, permits, and requirements by any municipal, federal or state authority, including its administrative agencies, applicable to the operation of the Premises for the purposes set forth in the Terminated Franchise Agreements, including without limitation, those laws and regulations related to prevention of air and water contamination and fuel dispatch pumps and any other equipment at the Premises, including the USTs and UST System. **Article 7.6.1 of the Terminated Franchise Agreements**.

h.      To pay for all notices, permits, licenses, charges and/or special taxes applicable to the operation of a gas station at the Premises or to the Franchisees' occupation thereto, including, without limitation, charges related to USTs and for services supplied for the Premises. **Article 10.1.2 (C), (I) and (J) of the Terminated Franchise Agreements**.

i.      To limit the liability of Puerto Rico Energy to property taxes due to its ownership of the underlying real estate, equipment or other movable property located at the Premises. **Article 10.2.1 of the Terminated Franchise Agreements**.

j.      To timely reimburse Puerto Rico Energy for any amounts paid by it to third parties which the Franchisees owed under the Terminated Franchise Agreements, including without limitation, expenses for utilities, maintenance or repairs. **Article 11.1.1 of the Terminated Franchise Agreements**.

k.      To accept the deduct or set off of any amount not reimbursed to Puerto Rico Energy from any other amounts owing to Franchisees under the Terminated Franchise Agreements or under any other contract or commercial transaction resulting between the Puerto Rico Energy and the Franchisees. **Article 11.1.2 of the**

**Terminated Franchise Agreement**.

l.      To assume all risk and liability, indemnify, and hold harmless Puerto Rico Energy and its directors, officers, shareholders, employees, successors, assignees, agents, and vendors, including for professional services, from any and all damages, expenses, costs, penalties, fines, liabilities, claims, demands, and causes of action in law or equity for violations to the laws and regulations, for claims related to the USTs or UST System, including underground lines, and any losses of any type or nature resulting from or as a consequence of the condition of the Premises and the Franchisees' noncompliance with laws and regulation, specifically including those relating to USTs and UST System at the Premises. **Articles 13.1.1 (A) and (D) of the Terminated Franchise Agreements**.

m.      To acknowledge that the duty to indemnify Puerto Rico Energy would survive the expiration of the Terminated Franchise Agreements. **Article 18.1.2 of the Terminated Franchise Agreements**.

n.      To pay in a timely manner when due all sums to which Puerto Rico Energy is legally entitled. **Article 16.1.1(L) of the Terminated Franchise Agreements**.

o.      To comply with all applicable laws related to each of the Premises. **Article 16.1.1(P) of the Terminated Franchise Agreements**.

p.      To not breach any of the terms of the Terminated Franchise Agreements. **Article 16.1.1(U) of the Terminated Franchise Agreements**.

q.      To comply with the UST Regulation administered by DNER. **Article 16.1.1(V) of the Terminated Franchise Agreements**.

r.      To prevent the occurrence of any other event or circumstance under which termination of the Terminated Franchise Agreements is permitted under the PMPA. **Article 16.1.1(X) of the Terminated Franchise Agreements**.

s.      To notify Puerto Rico Energy in writing immediately thereafter of the occurrence of any of the events enumerated in Section 16.1 of the Terminated Franchise Agreements. **Article 16.1.5 of the Terminated Franchise Agreements**.

t.      To agree and acknowledge that the Terminated Franchise Agreements and related exhibits, addenda and ancillary agreements, such those for the operation of integrated convenience stores, were complimentary contracts for each of the Premises, and to entitle Puerto Rico Energy with the right to terminate one or several of any such agreements upon an infringement by the Franchisees of any of these complimentary contracts. **Article 18.6 of the Terminated Franchise Agreements**.

**C.  Regulatory obligations covered under the Terminated Franchise Agreement**

52.     The UST Regulation has the stated purpose of promoting necessary compliance with facilities in possession of a UST System, establishing a permits and requirements system for the installation, operation, and closure of facilities in possession of a UST System, and protecting the health, public safety and environment in the Commonwealth. **Rule 802 of UST Regulation**.

53.     The UST Regulation provides that no person shall operate a UST System without previously obtaining a permit. **Rule 811(A)(1) of the UST Regulation**.

54.     The UST Regulation also provides that every owner and operator of a UST System must, at all times, maintain a copy of the UST System "operation permit" at the facilities in possession of a UST System, together with the monitoring and leak detection

reports, monitoring registry and all evidence demonstrating compliance with the requirements of the UST Regulation and other applicable federal and state rules. **Rule 811(A)(3) of the UST Regulation**.

55.    The "operation permit" is defined therein as the authorization granted by the DNER "for the operation [of a UST System] in accordance with the provisions of" the UST Regulation. **Rule 807(91) of the UST Regulation**.

56.    The UST Regulation also provides that every owner or operator of existing UST Systems not in compliance thereto must complete renewal procedures set forth in its Rule 811(C)(2) and include evidence of payment of an additional charge required under its Rule 946. **Rule 811(D)(2) of the UST Regulation**.

57.    Rule 946 provides that every owner or operator presenting an application for an operation permit regarding an existing UST System not in compliance with the UST Regulation must pay an additional charge of $250.00 per application. **Rule 946 of the UST Regulation**.

58.    The UST Regulation also provides that every owner and operator of existing UST Systems shall retain the required reports available for inspection by DNER staff at the facilities where the UST System is physically located. **Rule 817(A)(3) of the UST Regulation**.

59.    Whether a UST System was or was not in compliance with UST Regulation is determined at the time of its date of effectiveness, i.e., as of July 27, 2018. **Rule 921 of the UST Regulation**.

60.    The foregoing establishes a joint and several liability among owners and operators of UST Systems in Puerto Rico. Nevertheless, as explained below, by contract and

applicable Puerto Rico law, the Defendants are the sole parties responsible for the foregoing regulatory compliance requirements.

61.     As mentioned, the Franchisees agreed in the Terminated Franchise Agreements to comply with all laws and regulations applicable to the operation of the Premises as a gas station, including without limitation, those related to the use of USTs and UST System. **Article 7.6.1 of the Terminated Franchise Agreements**. They also agreed to pay for all permits and licenses applicable to the operation of the Premises as a gas station. **Articles 10.1.2 (C), (I) and (J) of the Terminated Franchise Agreements**. They specifically agreed and acknowledged that they would comply with the UST Regulation and that failure to comply with the UST Regulation would constitute grounds for termination of the franchise or nonrenewal of the franchise relationship. **Article 16.1.1(V) of the Terminated Franchise Agreements**.

62.     Similarly, the Franchisees agreed to assume all risk and liability, indemnify, and hold harmless Puerto Rico Energy from any and all expenses, costs, penalties, fines and liabilities for violations or claims related to UST Regulation or the UST System, and from any losses of any type or nature resulting as a consequence of the Franchisees' failure to comply with the UST Regulation. **Articles 13.1.1 (A) and (D) of the Terminated Franchise Agreements**.

63.     The Franchisees agreed to comply with their duty to indemnify Puerto Rico Energy even if Puerto Rico Energy, its agents, employees or vendors acted with comparative negligence or willful misconduct. **Article 13.1.2 of the Terminated Franchise Agreements**

64.     The Franchisees also acknowledged that this duty to indemnify Puerto Rico Energy would survive the expiration of the Terminated Franchise Agreements. **Article 18.1.2**

**of the Terminated Franchise Agreements**.

65.    The Franchisees also agreed to limit the liability of Puerto Rico Energy to the amount of property taxes due from its ownership of the underlying real estate, equipment or other movable property located at the Premises. **Article 10.2.1 of the Terminated Franchise Agreements**.

66.    These contractual provisions stipulate that the Franchisees agreed and acknowledged to be the sole party responsible for payment of any and all expenses, costs, penalties, fines and liabilities for violations or claims related to UST Regulation or the UST System, and from any losses of any type or nature resulting as a consequence of the Franchisees' failure to comply with the UST Regulation, and to ensure compliance with the foregoing regulatory requirements owed at the Premises under the UST Regulation for operation of a gas station.

67.    These provisions are a material and reasonable part of Puerto Rico Energy's standard franchises. They account for the fact that under Puerto Rico's Gasoline Law, Law No. 73 of June 23, 1978, as amended, Tit. 23 P.R. Laws Ann. § 1101 *et seq.* ("the Gasoline Law"), Puerto Rico Energy cannot legally operate, directly or indirectly, any gas station in Puerto Rico and depend entirely on dealers for the operation of leased marketing premises.[2]

68.    Accordingly, between Puerto Rico Energy and the Franchisees, pursuant to the Franchise Agreement and the relevant provisions of the Gasoline Law, the Franchisees are responsible for paying for all permits and licenses applicable to the operation of the Premises as a gas station and for indemnifying and holding harmless Puerto Rico Energy from any and all expenses, costs, penalties, fines and liabilities for violations or claims

---

[2] The only exception is the provisional operation for 90 days following surrender of a gas station by a former franchisee. See Tit. 23 P.R. Laws Ann. § 1102(c).

related to UST Regulation or the UST System and from any losses of any type or nature resulting as a consequence of the Franchisees' failure to comply with the UST Regulation, and for assuming all risk and liability thereof.

69.    Puerto Rico Energy has decided, as a matter of company policy, that it will enforce the reimbursement and indemnity repayments provisions in its standard franchise agreements across its network of dealers. This is a business decision made by Puerto Rico Energy in the ordinary course of business.

**D.  Events causing unpaid amounts due to Puerto Rico Energy**

70.    The Dealer was the franchisee for the operation of Premises 167 as a Puma brand gas station, and the principal shareholder and personal guarantor of Los Juanes for the operation of Premises 446 as a Puma brand gas station.

71.    The terms and conditions of the franchises for these premises are found in those certain franchise agreements of January 16, 2015, as to Premises 446, and existing as of December 13, 2021, as to Premises 167 ("the Past Premises Franchise Agreements"). [Exhibit 4: Premise 446 Franchise Agreement; Exhibit 5: Premise 167 Franchise Agreement]

72.    The Past Premises Franchise Agreements contain the same material and reasonable provisions (with the same numbering sequence) as the Terminated Franchise Agreements listed above. Los Juanes and Dealer operated the Past Premises as Puma brand gas stations at the time of the relevant inspections; namely, on March 4, 2021, as to Premises 446, and on December 13, 2021, as to Premises 167.

*Premises 446*

73.    On March 4, 2021, DNER staff completed an inspection of Premises 446 during Dealer's tenure as key person and personal guarantor of Los Juanes. DNER issued a

notice of violation where it made the finding that Premises 446 was being operated as a gas

station with an expired permit for the operation of a UST System and in violation of

recordkeeping requirements set forth in the UST Regulation. At the time, Dealer and Los

Juanes failed to notify Puerto Rico Energy of such inspection or notice of violation to Puerto

Rico Energy. [Exhibit 6: Notice of Violation Premises 446]

74.     The notice of violation resulted in the filing of a charge by the DNER,

identified as Charge No. the No. 23-050 (the "the First Charge") and filed on March 14,

2023. DNER initially sought a fine of $30,000.00. [Exhibit 7: First Charge]

75.     The fine was reduced to $20,000.00, following administrative proceedings

before DNER. [Exhibit 8: Pre-hearing Joint Order]

76.     Later, on April 19, 2024, DNER stipulated to lowering the total fine imposed

under the First Charge from $20,000.00 to $10,000.00. [Exhibit 9: Stipulation First Charge]

77.     Dealer was the corporate representative of Los Juanes at all relevant times.

Los Juanes also had the assistance of counsel throughout the proceedings. Both Los Juanes

and Dealer received notice of the proposed stipulation.

78.     The stipulation specifically provided that Puerto Rico Energy reserved the

right to oppose against third parties all defenses available under law or fact, to pursue against

any third party any and all claims available to it under applicable law, and to seek from third

parties the repayment and collection, total or partial, of the stipulated fine. The term "third

parties" as used therein includes the Dealer and Los Juanes.

79.     Nevertheless, Los Juanes and Dealer voluntarily refused to accept,

acknowledge or be a part of this stipulation, despite having been notified with it and its

content, where Puerto Rico expressly reserved its right to pursue payment against them as

third parties and did not relieve them of liability under the Premises 446 Franchise

Agreement and the personal guaranty thereto.

80.    Los Juanes and Dealer also voluntarily failed to seek reconsideration, judicial

review, or to otherwise challenge the stipulation following its notice on May 1, 2024.

81.    In doing so, they willingly and voluntarily sought, received and enjoyed direct

benefits from the stipulation that put an end to the First Charge.

82.    Puerto Rico Energy paid $10,000.00 to DNER as provided in the Stipulation.

Puerto Rico Energy also paid for the costs and expenses associated with the First Charge,

including attorney's fees. [Exhibit 10: Payment of First Charge Stipulation]

83.    It is worth noting that Los Juanes and Dealer adopted by reference, as their

own, many the legal arguments and memoranda submitted by Puerto Rico Energy's counsel

in the proposed pre-hearing joint order. *See* Exhibit 8.

84.    The sum of costs, expenses and fees paid by Puerto Rico Energy in

connection to the First Charge amounted to $37,660.00. The aggregate sum paid by Puerto

Rico Energy in connection to the First Charge resulting from the violation of the UST

Regulation and the Past Premises Franchise Agreement amounted to $47,660.00.

### *Premises 167*

85.    On December 13, 2021, DNER staff carried out an inspection at Premises 167.

86.    The inspection yielded violations to the UST Regulation, which resulted in an

administrative charge filed against the Dealer and Puerto Rico Energy on November 2, 2023,

identified as Charge No. 23-277 ("the Second Charge"). [Exhibit 11: Second Charge]

87.    The Second Charge sought to impose upon Dealer and Puerto Rico Energy a

fine totaling $35,000.00, which was later reduced to $10,000.00 following administrative

proceedings. You were represented by counsel during these proceedings and received all notices thereto.

88.    DNER later proposed a stipulation to close the Second Charge, of which you received written notice. However, you voluntarily refused to agree and participate in the stipulation. [Exhibit 12: Second Charge Stipulation]

89.    Puerto Rico Energy accepted DNER's proposed stipulation, which caused the reduction of the fine to $5,000.00. Puerto Rico Energy paid this amount to DNER as provided in the stipulation. It also paid for the costs and expenses associated with the Second Charge, including attorney's fees. [Exhibit 13: Payment of Second Charge Stipulation]

90.    The stipulation specifically provided that Puerto Rico Energy reserved the right to oppose against third parties all defenses available under law or fact, to pursue against any third party any and all claims available to it under applicable law, and to seek from third parties the repayment and collection, total or partial, of the stipulated fine. The term "third parties" as used therein included the Dealer, pursuant to its duties in the Premises 167 Franchise Agreement to reimburse, assume all risk and liability, and indemnify and hold harmless Puerto Rico Energy.

91.    Nevertheless, the Dealer voluntarily refused to accept, acknowledge or be a part of the stipulation, despite having been notified of it and its content, knowing that Puerto Rico Energy expressly reserved its right to pursue payment against the Dealer, and knowing that it did not relieve the Dealer of liability to Puerto Rico Energy under the relevant Premises 167 Franchise Agreement and the Dealer's continuing duty to indemnify Puerto Rico Energy beyond its termination.

92.    The Dealer also voluntarily failed to seek reconsideration, judicial review or

to otherwise challenge the stipulation following its notice on January 8, 2025.

93.     The Dealer's actions clearly entail that he sought, received and enjoyed direct benefits from the stipulation that put an end to the Second Charge against him.

94.     In fact, the Dealer was entitled with 30 days from the day of the notice of the stipulation to seek its judicial review, expiring on February 7, 2025. Instead of challenging the stipulation and seeking a declaration that you had no duty or liability under the UST Regulation to pay the fine, you waived, accepted and derived direct benefits from the stipulation and payment executed by Puerto Rico Energy.

95.     Meanwhile, the Dealer was also denying and refusing to meet his end of the bargain to indemnify and hold harmless Puerto Rico Energy for the amounts due arising out of his operation of Premises 446.

96.     In light of the above, on March 18, 2025, Puerto Rico Energy notified the Dealer with an indemnity claim and collection letter in which Puerto Rico Energy sought the payment of $19,685.37, which is the sum of the fine paid pursuant to the stipulation of the Second Charge ($5,000.00) and the expenses from attorney's fees associated with defending and stipulating the Second Charge ($14,685.37).

### *Duty to pay under the Past Premises Franchise Agreements*

97.     As stated, Los Juanes and Dealer, as its key person and personal guarantor, agreed to pay for all permits, licenses and charges applicable to the operation of a gas station at the Past Premises, including without limitation, the express obligation to pay for all licenses, permits, and charges related to the UST System at the Past Premises. **Article 10.1.2 of the Past Premises Franchise Agreements**.

98.     Los Juanes and Dealer also agreed to the duty to timely reimburse to Puerto

Rico Energy all amounts paid to third parties which were owed by Los Juanes under the Past Premises Franchise Agreement. **Article 11.1.1 of the of the Past Premises Franchise Agreements**.

99.    Los Juanes and Dealer also agreed to assume all risk and liability, indemnify, and hold harmless Puerto Rico Energy from any and all expenses, costs (including professional services), penalties, fines and liabilities for violations or claims related to UST Regulation or the UST System, and from any losses of any type or nature resulting as a consequence of the Defendants' failure to comply with the UST Regulation at the Past Premises. **Articles 13.1.1 (A) and (D) of the Past Premises Franchise Agreements**.

100.    Los Juanes and the Dealer also acknowledged that this duty to indemnify Puerto Rico Energy would survive the expiration of the Past Premises Franchise Agreement. **Article 18.1.2 of the Past Premises Franchise Agreements**.

101.    Los Juanes and the Dealer also agreed to limit Puerto Rico Energy's liability to property taxes, owed on the underlying real estate or on equipment and movable property belonging to Puerto Rico Energy. **Article 18.1.2 of the Past Premises Franchise Agreements**.

102.    The Dealer also included an unconditional and continuing payment personal guaranty for all amounts due to Puerto Rico Energy by Los Juanes under the Past Premises Franchise Agreement. **Annex C of Premises 446 Franchise Agreement**.

103.    Pursuant to the above-referenced material terms and conditions of the Past Premises Franchise Agreement, Los Juanes and the Dealer, personally, owe to Puerto Rico Energy the total sum of $67,345.37.

**E.   <u>Dealer's voluntary unwillingness to pay amounts due to Puerto Rico Energy</u>**

104.    At all relevant times, the Dealer has refused to pay amounts due by him to Puerto Rico Energy under the Past Premises Franchise Agreement.

105.    The Dealer has remained obstinate despite the fact that his failure to pay to Puerto Rico Energy in a timely manner when due all sums to which Puerto Rico Energy is legally entitled is a *per se* reasonable ground for termination of the Terminated Franchise Agreements, in which he is the franchisee or the franchisee's shareholder, key person and personal guarantor.

106.    As stated, Puerto Rico Energy has decided to pursue the reimbursement and indemnity repayments across its network of dealers resulting from DNER enforcement actions under the UST Regulation, such as those associated with the First and Second Charges. This is a business decision by Puerto Rico Energy that is part of the ordinary course of its business

107.    The Dealer was formally informed of his duty to pay these amounts to Puerto Rico Energy since April 19, 2024. The Dealer was informed in writing that under the terms of the Past Premises Franchise Agreements, the Dealer was personally liable to Puerto Rico Energy and that he had a duty to reimburse, indemnify and hold harmless Puerto Rico Energy for these amounts. [Exhibit 14: Letter of April 19, 2024]

108.    Puerto Rico Energy later issued and served Dealer with a second notice on May 13, 2024. This second notice set forth the liquid and total amount owed by Dealer to Puerto Rico Energy, inclusive of attorney's fees subject to the indemnity provisions in the Past Premises Franchise Agreement. [Exhibit 15: Letter of May 13, 2024]

109.    Puerto Rico Energy issued a third collection notice on November 6, 2024. In this third letter, Puerto Rico Energy informed the Dealer that his failure to pay these amounts

due would generate a charge or invoice against the Dealer's active franchises with Puerto Rico Energy, which would trigger an electronic funds transfer under Articles 3.1 and 3.2 of the Terminated Franchise Agreements. [Exhibit 16: Letter of November 6, 2024]

110.    Lastly, the Franchisees were served with a comprehensive, final payment demand for payment, reimbursement, and indemnification on February 5, 2025. [Exhibit 17: Letter of February 5, 2024]

111.    In a letter of February 7, 2025, the Dealer refused and rejected any duty to pay reimburse and indemnify Puerto Rico Energy for these amounts. This refusal constitutes a failure to timely pay amounts when due to Puerto Rico Energy under Article 16.1.1(L) of the Terminated Franchise Agreements, which constitutes grounds for termination across all Premises (personally at Premises 98 and 178, and as CJL's shareholder, key person and personal guarantor at Premises 862). [Exhibit 18: Letter of February 7, 2024]

112.    The Franchisees expressly asserted that Puerto Rico Energy was the sole party responsible for renewing UST operation permits at each of the Premises. This affirmation by Franchisees fails to acknowledge their duty to indemnify and to pay Puerto Rico Energy for the fines and expenses associated with the Charge. It also amounts to a contractual breach and refusal to comply with ongoing compliance requirements under the UST Regulation and Articles 7.6.1, 10.1.2 (C), (I) and (J), and 16.1.1(V) of the Terminated Franchise Agreements. *See* Exhibit 18.

113.    Following various efforts between the parties' counsel, carried out by Puerto Rico Energy as a good faith attempt to avoid the foregoing termination, on March 4, 2025, Puerto Rico Energy offered Franchisees a last opportunity to avoid termination by acknowledging the debt and executing an installment payment plan. [Exhibit 19:  Email of

March 4, 2024]

114.    The Franchisees were advised that failure to timely pay these amounts due to Puerto Rico Energy constituted *per se* reasonable grounds for termination of a franchise under the PMPA. 15 USC §§ 2802(b)(2)(A), 2802(b)(2)(C), and 2802(c)(8). *See* Exhibit 19.

115.    The Franchisees were also advised that the withdrawal of their authorization to Puerto Rico Energy to establish and utilize a payment method under the Terminated Franchise Agreements, including direct debit or other electronic funds transfer, may be considered a failure to comply with a reasonable provision of the franchise with material significant to the franchise relationship, which would be deemed additional grounds for termination of the franchise under the PMPA. 15 USC § 2802(b)(2)(A). *See* Exhibit 19.

116.    The Dealer received an additional notice informing him that he was personally liable to Puerto Rico Energy and that he had a duty to reimburse, indemnify and hold harmless Puerto Rico Energy for the amounts in the Second Charge. [Exhibit 20: Letter of March 16, 2025]

117.    Despite Puerto Rico Energy's good faith efforts, it failed to receive payment or acknowledgement of the debt. The Dealer's inaction can only be construed as his continued and willful refusal to acknowledge and pay the amounts due to Puerto Rico Energy.

118.    The Dealer is the franchisee at Premises 98 and 178. His personal failure to pay these amounts due to Puerto Rico Energy constitutes grounds of termination under Premises 98 and 178 Franchise Agreements and the PMPA.

119.    The Dealer is also CJL's shareholder, key person and personal guarantor at Premises 862. As CJL's shareholder, key person and personal guarantor, the Dealer

personally agreed to comply with the provisions of the franchise and CJL agreed that the

Dealer's personal failure to pay amounts due to Puerto Rico would be grounds for

termination of its franchise with Puerto Rico Energy. **Articles 4.2.5, 4.2.10 and 4.1.11 of the**

**Premise 862 Franchise Agreement**.

120.    The Franchisees also agreed the Puerto Rico Energy would have sole and

absolute discretion to accept or reject the substitution or change of any corporate member or

key person in violation of Article 16 of the Premise 862 Franchise Agreement and, further,

that Puerto Rico Energy would normally deny its consent to any such substitution or change

when the relevant acts or events that would warrant termination or nonrenewal under Article

16 of the Franchise Agreement affected or were in any way relevant to the operation of the

Premises. **Articles 4.2.5, 4.2.10 and 4.1.11 of the Premise 862 Franchise Agreement**.

121.    These amounts are liquid, outstanding and due Dealer due to Puerto Rico

Energy.

122.    Each day that the Dealer fails to pay these amounts due to Puerto Rico Energy

constitute a new event relevant to the franchise relationship, as a result of which termination

of the franchise is reasonable and permissible under the PMPA and its interpretative case

law.

**F.  Additional grounds for termination of franchise relationship**

123.    In addition to Dealer's own failure to pay amounts when due to Puerto Rico

Energy, the Franchisees have jointly expressed their refusal and unwillingness to comply

with the Terminated Franchise Agreements' environmental compliance requirements under

the UST Regulation and its provisions establishing payment methods.

124.    In their letter of February 7, 2025, the Franchisees expressly rejected and

refused to acknowledge its duty to obtain, maintain, renew and pay for the UST System operation permits at the Premises.

125.    The language of the Terminated Franchise Agreements leave no doubt that, to reap the benefits of the franchise, the Franchisees assumes the duty to pay for all permits and licenses applicable to the operation of the Premises as a gas station, which squarely include paying for the UST System operation permits at the Premises.

126.    In tandem with the above, Articles 10.2.1 and 13.1.1 (A) and (D) of the Terminated Franchise Agreements make clear that the Franchisees agreed that Puerto Rico Energy would only be liable for property taxes, owed on the underlying real estate or on equipment and movable property belonging to Puerto Rico Energy, and that they assumed all risk and liability over costs, expenses, fines and other losses relating to noncompliance with the UST Regulation.

127.    Similarly, Article 7.6 of the Terminated Franchise Agreements expressly provides that the Franchisees agreed to comply with all laws and regulations, including those pertaining to the UST System.

128.    Also, Article 16.1.1(V) of the Terminated Franchise Agreements unambiguously requires the Franchisees to comply with the UST Regulation, which in turn require the Franchisees to obtain, maintain, renew and pay for the UST System operation permit at each of the Premises.

129.    Despite such unmistakable contractual obligations, in the letter of February 7, 2025, the Franchisees expressly rejected and refused to acknowledge their duty to obtain, maintain, renew and pay for the UST System operation permits at each of the Premises, which is an obligation imposed upon them in the UST Regulation.

130.    The Franchisees' express refusal to comply with material and reasonable provisions of the Terminated Franchise Agreements requiring the Franchisees, as it does to all other Puerto Rico Energy franchisees, to obtain, maintain, renew and pay for the UST System operation permits at each of the Premises, as required by the Franchise Agreement and the UST Regulation, is deemed a knowing and willful breach of the Terminated Franchise Agreements making its termination reasonable, and the occurrence of an event relevant to the franchise relationship which makes termination reasonable. **15 USC § 2802(b)(2)(A) and (C)**.

131.    The PMPA allows Puerto Rico Energy to end franchise relationships with dealers who refuse to comply with material provisions of the franchise; let alone provisions related to compliance with important environmental protection regulations.

132.    Similarly, it is a material and reasonable obligation under the Terminated Franchise Agreements that the Franchisees agreed to pay any amounts due under the Terminated Franchise Agreements via direct debit or electronic funds transfer, unless Puerto Rico Energy notifies Franchisee a different method. **Articles 3.2.2 and 3.2.3 of the Terminated Franchise Agreements**.

133.    Nevertheless, on February 7, 2025, the Franchisee informed that it withdrew its consent to pay Puerto Rico Energy these amounts due under the Franchise Agreement via direct debit or electronic funds transfer. As a result, Puerto Rico Energy has been unable to draw payment to cover the debt via electronic funds transfer.

134.    Pursuant to the terms of the Terminated Franchise Agreements and relevant provisions of Puerto Rico's Commercial Transactions Act, Puerto Rico Energy has the right to establish the payment methods applicable to each of its franchisees for the payment of

other amounts due under the franchise, including direct debit or other electronic funds transfer. The Franchisees must pay these amounts through methods approved by Puerto Rico Energy on the dates due it designated.

135.    This right to establish the payment method and the franchisee's duty to pay amounts when due through payment methods approved by Puerto Rico Energy are material and reasonable provisions of the franchise relationships. **Articles 3.2.2 and 3.2.3 of the Terminated Franchise Agreements**.

136.    As such, the Franchisees' withdrawal of authorization to Puerto Rico Energy to establish and utilize a payment method under the Terminated Franchise Agreements for payment of these amounts, including direct debit or other electronic funds transfer, is a willing failure to comply with a provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, which can be deemed independent grounds for termination of the franchise under the PMPA. **15 USC § 2802(b)(2)(A)**.

G.  **Notice of termination of franchise relationship**

137.    In light of the foregoing, by letter dated April 14, 2025, posted by certified mail, return receipt requested, Puerto Rico Energy notified the Franchisees of the termination of the franchise and franchise relationship between the parties effective immediately (including all enclosures thereto, the "Notice of Termination"). [Exhibit 21: Notice of Termination and evidence of service]

138.    Together with the Notice of Termination, Puerto Rico Energy provided the Franchisees with a Revised Summary Statement of Title I of the PMPA ("Summary Statement"). *See* Exhibit 21.

139.    A courtesy copy was provided to its counsel via email. [Exhibit 22: Courtesy Email of Notice of Termination]

140.    The Notice of Termination identified the breaches of the Terminated Franchise Agreements that gave rise to the termination of the franchises and identified the specific grounds for termination resulting from such breaches.

141.    The Notice of Termination issued to the Franchisees identified the damages due and owing as of the effective date of termination, including $47,660.00 due pursuant to Dealer's failure to pay amounts due under the Past Premises Franchise Agreement and Dealer's personal guaranty thereof.

142.    On April 16, 2025, Puerto Rico Energy issued a Supplement to the Notice of Termination. The Supplement was notified via email to Franchisees' counsel. The Supplement addresses the debt arising out of the more recently concluded Second Charge, which constitutes additional grounds of termination and augmented the amount owed by the Dealer to Puerto Rico Energy. [Exhibit 23: Supplement to Notice of Termination]

143.    Despite the express demands for payment in the Notice of Termination and previous collection letters, none of the defendants have made any payments to Puerto Rico Energy on the amounts due and owing since the Notice of Termination was issued.

**H.  Dealer's failure to comply with post-nonrenewal obligations**

144.    In accordance with Articles 2.1.3, 6.1.13, and 16.4 of the Terminated Franchise Agreements, upon termination, Puerto Rico Energy was entitled to suspend the delivery and supply of fuel at the Premises, apply any payment bond Franchisees had provided to Puerto Rico Energy, and recover immediate possession of each of the Premises in voluntary, peaceful, and orderly fashion.

145.    In the Notice of Termination, Puerto Rico Energy notified the Franchisees that it had ordered the immediate suspension of future orders or deliveries at each of the Premises.

146.    Puerto Rico Energy also demanded that the Franchisees performs the following post-termination obligations on the date set below: 1) peacefully deliver and surrender each of the Premises to Puerto Rico Energy on or before Monday, April 21, 2025 at 5:00pm; 2) remove all of Franchisees' inventory and equipment; 3) under no circumstance, identify the Premises with the PUMA, Super7, Texaco or Star Mart brands, as applicable, nor any imitation or derivative of the same or otherwise remove, damage or in any way modify the PUMA, Super7, Texaco or Star Mart identifications located at each of the Premises; 4) pay debts related to public utilities, employees, personnel, permits, or fees; and 5) deliver a copy of the current usage permit and all of the licenses for the use, occupation, and/or operation of the property to Puerto Rico Energy.

147.    Puerto Rico Energy specifically requested Franchisees to confirm in writing, by 5:00pm of April 16, 2025, that they will comply with the foregoing post-termination demands and return possession of each of the Premises to Puerto Rico Energy in voluntary, peaceful and orderly fashion.

148.    On or before April 16, 2025, the Franchisees confirmed via its counsel that they would not voluntarily comply with the post-termination demands in the Notice of Termination and return possession of each of the Premises to Puerto Rico Energy in voluntary, peaceful and orderly fashion.

149.    To this day, the Franchisees continue to retain holdover possession of the Premises and continue to illegally use Puma/Super7/Shop Express and Texaco/Star Mart

identifying trademarks, including without limitation, identification signs, trademarks, tradenames and colors, logos, brand identification, product and service advertising credit cards, products names and service marks (hereinafter "the Identifying Marks") despite the termination of the Terminated Franchise Agreements.

150.    They also continue to sell products under the Identifying Marks at each of the Premises without Puerto Rico Energy's authorization. By doing so, they mislead and confuse motorists and the general public, passing off as authorized dealers under the Identifying Marks, as applicable, when they stopped having such authorization as of the date of the Notice of Termination.

### Count I: Declaratory Judgment under 15 U.S.C. §§ §§ 2021 and 2022

151.    Puerto Rico Energy repeats and realleges the allegations set forth in paragraphs 1-150 above as if fully set forth in this Count I.

152.    As a result of the acts described in the preceding paragraphs—including Dealer's failure to pay amounts due under the Past Premises Franchise Agreement and his personal default under the personal guaranty thereto, Defendants' breach of the Terminated Franchise Agreements and Dealer's respective personal guaranties described herein, as well as Defendant's failure to confirm their compliance with their post-termination covenants to surrender possession of the Premises over to Puerto Rico Energy following its termination of the Terminated Franchise Agreements and the PMPA franchise relationship thereunder—an actual controversy exists between the parties.

153.    A declaration of the rights and obligations of the parties with respect to the Terminated Franchise Agreements, the Past Premises Franchise Agreement, and the related guaranties thereof will clarify the parties' legal relations.

154.    As a result, pursuant to 28 U.S.C. §§ 2201 and 2202, Puerto Rico Energy is entitled, among other things, to the following declarations:

a.    Dealer is obligated to pay amounts owed under Past Premises Franchise Agreement and the personal guaranty thereto;

b.    Dealer's unwillingness to pay represents a failure to comply with provisions of the Premises 98 and 178 Franchise Agreements, which provisions are both reasonable and of material significance to the franchise relationship;

c.    Dealer's unwillingness to pay also represents the occurrence of an event which is relevant to the franchise relationships and as a result of which termination of the Premises 98 and 178 Franchise Agreements is reasonable;

d.    Dealer's unwillingness to pay also represents a failure to comply with provisions of the Premises 862 Franchise Agreement, which provisions are both reasonable and of material significance to the franchise relationship, inasmuch Dealer is CJL's key person, shareholder and personal guarantor;

e.    Dealer's unwillingness to pay also represents the occurrence of an event which is relevant to the franchise relationships and as a result of which termination of the Premises 862 Franchise Agreements is reasonable, inasmuch Dealer is CJL's key person, shareholder and personal guarantor;

f.    Franchisees' refusal to pay for these amounts via electronic debit or automated transfer is both a failure to comply with provisions of the Terminated Franchise Agreements, which are both reasonable and of material significance to the franchise relationship, and the occurrence of an event which is relevant to the franchise relationships and as a result of which termination of the Terminated Franchise

Agreements is reasonable;

g.      Franchisees' refusal to comply and rejection of their duties to comply with the UST Regulation as it relates to their duties as operators to obtain, maintain, renew and pay for the UST System operation permit at the Premises is both a failure to comply with provisions of the Terminated Franchise Agreements, which are both reasonable and of material significance to the franchise relationship, and the occurrence of an event which is relevant to the franchise relationships and as a result of which termination of the Terminated Franchise Agreements is reasonable;

h.      Puerto Rico Energy provided proper notification of the termination of the Terminated Franchise Agreements and franchise relationship between Puerto Rico Energy and the Franchisees at the Premises pursuant to the PMPA;

i.      Termination of the of the Terminated Franchise Agreements and franchise relationship between Puerto Rico Energy and the Franchisees is justified and in accordance with the PMPA;

j.      Franchisees' express failure to completely surrender the Premises and cease using the Identifying Marks as of April 21, 2025, constitutes a violation of the Terminated Franchise Agreements as a result of which failure Puerto Rico Energy is entitled to enter and repossess the Premises and the trademarks located installed therein at Franchisees' expense;

k.      Franchisees' express failure to completely surrender the Premises and cease using the Identifying Marks as of April 21, 2025, is likely to cause confusion to motorists and the general public and is likely to cause irreparable harm upon Puerto Rico Energy and its trademarks; and

l.    For such other and further relief declaring the rights and liabilities between the parties under the circumstances.

**Count II: Trademark Infringement and Dilution under the Lanham Act**

155.    Puerto Rico Energy repeats and realleges the allegations set forth in paragraphs 1-154 above as if fully set forth in this Count II.

156.    The Franchisees' acts are confusing the public and represent falsely that the Franchisees' services and products are legitimately authorized, approved or endorsed by Puerto Rico Energy, which constitute a violation of Section 43(a) and (c) of the Lanham Act, 15 U.S.C. § 1125(a) and (c).

157.    The Franchisees' acts have caused Puerto Rico Energy to suffer injury and damages of such a nature that an award of monetary damages alone could not adequately compensate them.

158.    The Franchisees' acts are diluting and tarnishing the Identifying Marks and have caused Puerto Rico Energy to suffer injury and damages of such a nature that the company could not be adequately compensated by an award of monetary damages alone. Particularly, when Puerto Rico Energy has no control whatsoever over the Franchisee's use of its trademarks.

159.    Because an award of monetary damages cannot fully and adequately compensate Puerto Rico Energy for the injuries to the Identifying Marks, Puerto Rico is without an adequate remedy at law.

160.    The Franchisees are greatly and irreparably damaging to Puerto Rico Energy and will continue to be greatly and irreparably damaging to it unless enjoined by this Court since it is without an adequate remedy at law.

## Count III: Preliminary and Permanent Injunction

161.    Puerto Rico Energy repeats and realleges the allegations set forth in paragraphs 1-160 above as if fully set forth in this Count III.

162.    In light of the aforementioned facts, the Franchisees should be enjoined by this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure and applicable trademark law and instructed to cease and desist of the aforementioned acts.

163.    Defendants should be ordered cease and desist from: a) exercising possession and control over the Premises, including the gas stations, buildings, facilities and other equipment located therein, including the UST Systems, b) diluting and infringing the Identifying Marks, and c) breaching their post-termination duties.

164.    Puerto Rico Energy is without an adequate remedy at law because an award of monetary damages cannot fully and adequately compensate it for its injuries.

## Count IV: Dispossession of Premises and Equipment

165.    Puerto Rico Energy repeats and realleges the allegations set forth in paragraphs 1-164 above as if fully set forth in this Count IV.

166.    In light of the above, Puerto Rico Energy has a right to judicially dispossess the Franchisees from the Premises by virtue of the Franchises Agreements.

167.    Moreover, since Puerto Rico Energy rightly and validly terminated the franchises with the Franchisees due to the latter's non-compliance with provisions that are both reasonable and of material significant to the franchise relationships, Puerto Rico Energy has the right, as provided for in Article 2.1.3 of the Terminated Franchise Agreements, to dispossess the Franchisees of the Premises.

## Count V: Breach of Contract and Collection of Monies

168.    Puerto Rico Energy repeats and realleges the allegations set forth in paragraphs 1-167 above as if fully set forth in this Count V.

169.    As of the issuance of the Notice of Termination, the Dealer owed Puerto Rico Energy $67,345.37 in unpaid indemnifications under the Past Premises Franchise Agreements and the personal guaranties therein, along with interest, attorneys' fees and costs, including all costs incurred by Puerto Rico Energy to settle the First and Second Charges.

170.    This outstanding debt by the Dealer constitutes a breach of the Terminated Franchise Agreements, individually as to Premises 98 and 178, and as CJL's key person at Premises 862.

171.    Puerto Rico Energy has and will continue to incur attorneys' fees and other costs in conjunction with its efforts to enforce its rights and/or remedies under the Terminated Franchise Agreements, the Past Premises Franchise Agreement, and all related personal guaranty agreements through this action.

172.    Pursuant to the provisions of relevant sections of the Puerto Rico Civil Code and the agreements between Puerto Rico Energy and the Dealer, the former is entitled to recover from the latter an amount not less than $67,345.67, plus interest, from the date the each debt was incurred until full payment thereof.

173.    In addition, Puerto Rico Energy is entitled to recover damages from the Franchisees in an amount not less than $300,000.00, for their breach of the Terminated Franchise Agreements which will result in Puerto Rico Energy's inability to receive the benefits of the purchase of gasoline agreed to in the franchise agreements until it is able to find and designate a new dealer for each of the Premises.

174.    The Franchisees' illegal acts have deprived and will continue to deprive

Puerto Rico Energy of the benefits of its projected market share and revenue in the relevant areas.

### Count VI: Indemnification under the Terminated Franchise Agreements

175.    Puerto Rico Energy repeats and realleges the allegations set forth in paragraphs 1-174 above as if fully set forth in this Count VI.

176.    If Puerto Rico Energy is made a party to any lawsuit or any legal action as a result of any act of the Franchisees or as a result of the Franchisees' continued possession of the Premises, the Franchisees must indemnify and hold harmless Puerto Rico Energy from all expenses, fines, suits, proceedings, claims, losses, damages, liabilities or actions of any kind of nature, including, but not limited to, costs and attorneys' fees.

177.    Puerto Rico Energy currently has no control of the Premises nor can it monitor any of the Franchisees' acts and/or omissions as to the management of hazardous fuel products, for which Puerto Rico Energy may be liable under federal and state environmental laws, rules and regulations, among others.

178.    The Franchisees must be made liable for any expense, cost, loss or damage sustained by Puerto Rico Energy as a consequence of any claim made by any person or entity as a result of the Franchisees' deceptive and illegal acts, including, but not limited to, gasoline spills, leaks from the underground storage tanks, fires, explosions, and slip and falls, among others.

### Count VII: Treble Damages

179.    Puerto Rico Energy repeats and realleges the allegations set forth in paragraphs 1-178 above as if fully set forth in this Count VII.

180.    As a result of the Franchisees' willful and malicious conduct, Puerto Rico

Energy is entitled to recover from them actual damages, treble damages and the attorneys'
fees and the expenses it has incurred in bringing this action, pursuant to 15 U.S.C. §§ 1114(1)
and 1117(a) and the Puerto Rico Civil Code.

181.    Since the Franchisees have intentionally and willfully breached their
contractual duties, Puerto Rico Energy is entitled to recover any and all damages resulting
from said breach, which include all attorneys' fees incurred to prosecute this case, and which
are estimated in an amount not less than $300,000.00.

### **Prayer for Relief**

WHEREFORE, Puerto Rico Energy as against all defendants, respectfully claims:

A.  Declaratory judgment relief as set forth in Count I above;

B.  Declaratory judgment relief as set forth in Count II above;

C.  A preliminary and permanent injunction as set forth in Count III above;

D.  A judgment of dispossession of premises and equipment as set forth in Count IV
    above;

E.  Damages as further determined hereafter, as set forth in Count V above;

F.  Indemnification as further determined hereafter, as set forth in Count VI above;

G.  Treble Damages, as set forth in Count VII above;

H.  Interest, costs and attorneys' fees; and

I.  Such other further relief legal or equitable to which Puerto Rico Energy may be
    justly entitled.

*[Verification follows]*

40

**UNSWORN STATEMENT UNDER PENALTY OF PERJURY**

I, Francisco Pagés, Retail Director of Puerto Rico Energy LLC, declare under penalty of perjury under the laws of the United States of America that the foregoing allegations and supporting exhibits is true and correct to the best of my knowledge and belief and/or pursuant to information and documents in possession of Puerto Rico Energy LLC or its employees.

Executed on April 16, 2025.

_____

Dated on April 16, 2025.

Respectfully submitted, in San Juan, Puerto Rico, by:

PLAINTIFF,
Puerto Rico Energy LLC


*/s/ Aníbal J. Núñez*
Aníbal J. Núñez
USDC-PR No. 230101
**Núñez González Law Firm**
4201 Wilson Blvd.
Suite 300
Arlington, VA 22203
Tel: 787-305-1050
Cel: 787-595-0390
Email: anibal.nunez@nunezgonzalez.com

Its Attorney